## Michael Bulick, Sr., Administrator (Estate of Stephen Dubinsky) *v.* Joseph Dubinsky

Superior Court      Tolland County      File No. 6253

Memorandum filed October 6, 1953.

*Robert J. Pigeon,* of Rockville, for the Plaintiff.

*Etalo G. Gnutti,* of Stafford Springs, for the Defendant.

Anderson, J.  This is an action for a declaratory judgment seeking a determination of the question whether $6000 sent by the decedent, Stephen Dubinsky, on April 2, 1951, during his lifetime, to his brother Joseph Dubinsky was a gift or a loan. Stephen Dubinsky died August 3, 1951, leaving a will executed April 24, 1943. The decedent was a bachelor and left surviving him a brother, the defendant

Joseph Dubinsky, and a sister, Anna Kish. The underlying scheme of his will was to divide his property equally between his brother and sister. On April 2, 1951, including the $6000 sent to his brother, Stephen Dubinsky had a little over $30,000 in bank deposits. These deposits made up the bulk of his estate at his death. Other than $500 in United States government savings bonds which Stephen had placed in his name jointly with that of his sister, Anna Kish, and occasional gifts of $25 or so which he gave his sister when he visited her at her home, there is no convincing evidence that he made any large gifts, i.e. $1000 or over, to any members of his family. It is apparent that although Stephen Dubinsky lived in Stafford Springs, Connecticut, his sister lived in Perth Amboy, New Jersey, and his brother lived in Cadiz, Ohio, and they did not see each other frequently, Stephen felt a strong bond of kinship with his brother and sister and their families.

Joseph Dubinsky and his wife Anna Dubinsky had a son Theodore, called Ted, as well as two other sons, Bill and Joseph. In March of 1951 Ted, encouraged by his parents, decided to build a home for himself, his wife and child and was contemplating applying for a G. I. loan. He was advised that he would need a part of the purchase price in cash and that he could then procure the balance through the G. I. mortgage. Members of his family thought he should try to borrow from his Uncle Stephen the initial cash payment and to this end, on March 12, 1951, his mother wrote a letter in Czechoslovakian in the name of her husband Joseph Dubinsky to Stephen which said in part: "He [Ted] asked whether or not you will give him the money. I am writing you only what they told me to ask you if you will make the loan." And also: " . . . as it was discussed here... that you would give Ted money for the

house. . . . They asked me to write to you in Slovak as I am writing to you if you will make the loan as this is your money." Nothing was said about the total cost of the house Ted planned to build.

Stephen Dubinsky replied on March 23, 1951, by a letter in Czechoslovakian saying in part: "I am writing you in regards to the letter I received from you and have read it carefully that Bill would want to buy a house and would I loan him the money. I would give you the money so that you desire to buy a house I will send you a check on you brother but you will have to save and pay the interest the interest should be deposited in the bank upon your name brother and I will leave that to you and should I die you should inherit both the interest and principal and I will go to the bank on the first of April and get a check for $5000. . . ." He obviously confused Ted with Ted's brother Bill, but made it clear that he would advance the money to the father, i.e. Stephen's brother Joseph, instead of the nephew.

The translation of this letter is disputed by the defendant, who submitted his own somewhat different translation made by his wife, Anna Dubinsky. I am satisfied that the translation submitted by the plaintiff is the correct one. It was translated by a witness, Theodore Placek, a long-time employee of the post office department who was experienced and qualified, who had no connection with any of the parties and who appeared to be totally disinterested. He first made the translation at the request of the judge of probate at Stafford Springs. Mr. Placek conceded on cross-examination that the word which he translated as "inherit" could be rendered as "receive." The defendant placed some stress on Stephen Dubinsky's use of the words "I would give you the money," but the word "give" as used here, as well as in the above excerpts from the defendant's own letter, is synonymous with "make avail-

able to" and is consistent with an intention to make a loan. The mention of interest supports the proposition that Stephen was thinking in terms of a loan.

Although the defendant now claims that Stephen's letter to him of March 23 shows that Stephen intended to make him a gift, the defendant had no such notion on March 26, 1951, when he acknowledged Stephen's letter of March 23. The defendant on March 26 did not acknowledge a gift but repeatedly referred to the transaction as a loan: "[H]e then would owe the money to you and he would repay it to you as rent. . . . [S]hould you want or need any money I would send you the money out of the bank. . . . [I]t would be cheaper if we would owe you. . . . [I]f he owed you the money only. . . ." The purpose of this letter of March 26 was to persuade Stephen to loan Ted not only $5000 but the entire purchase price of the house to obviate the necessity of procuring a G. I. loan although nothing was said even at this time as to what the purchase price was. It is this request for additional money sent on March 26, 1951, which explains why Stephen sent a bank check for $6000 to the defendant on April 2 instead of the $5000 which he offered to advance in his letter of March 23.

The defendant's letter of April 6, 1951, to Stephen notifying him that the check was received is barren of any implication that it is the acknowledgment of a gift.

The defendant does not claim that this was a gift causa mortis and, in view of the fact that there was no evidence whatever that the money was sent by Stephen to Joseph in contemplation by Stephen of the conception on Stephen's part of the approach of his own death, no such claim could reasonably be made. *Prendergast* v. *Drew*, 103 Conn. 88, 92.

The defendant claims a gift inter vivos. I find, however, that in sending the bank check for $6000 to his brother Joseph on April 2, 1951, Stephen Dubinsky did not intend to part with his right to the money nor was there any intention on his part that the ownership of the money should pass immediately and irrevocably to Joseph Dubinsky or anyone else. He meant to retain control of it, at least until his death. There was therefore no inter vivos gift. *Kriedel* v. *Krapitz,* 137 Conn. 532.

It might be claimed from Stephen's words in his letter of March 23, "[S]hould I die you should receive both the interest and principal," that Stephen intended that Joseph should have the entire right to the principal and interest on Stephen's death; or by these words Stephen might have had in mind the provisions in his will under which, in case of his death, Joseph would doubtless receive a share considerably in excess of the sum in question, which he would retain as part of his share. The former, would of course, be ineffective as an improper attempt to make a testamentary disposition of the money, and the latter would contradict any intent to give Joseph ownership of the money at the time it was advanced.

The testimony of the defendant and the witnesses from his immediate family reflected their interest in the outcome of the action.

In response to the prayer in the complaint for a declaratory judgment determining whether the advancement to Joseph Dubinsky was a loan or gift it is adjudged that the advancement was a loan.